UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-05-53-B-W |
| | ) | |
| WINSLOW NEWBERT | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON GOVERNMENT'S MOTION TO RECONSIDER ORDER
GRANTING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA**

On January 17, 2007, the Court granted Winslow Newbert's Motion to Withdraw Guilty Plea and on January 19, 2007, the Government moved to supplement the record and for reconsideration. The Court grants in part the motion to supplement, but denies the motion for reconsideration.

The Government's main point is that the Court drew an unwarranted conclusion from the appeal provision of the plea agreement. The plea agreement provided that Mr. Newbert waived his right to appeal a "sentence of imprisonment that does not exceed the number of months provided for in Offense Level 10" of the Sentencing Guidelines. *Agreement to Plead Guilty* at 3 (Docket # 109). At Mr. Newbert's criminal history category, the guideline range at offense level 10 would have resulted in a sentencing range between 15 and 21 months.

In its Presentence Report, the Probation Office concluded that the guideline range was between 210 and 240 months, because Mr. Newbert fit the definition of a "career offender" under U.S.S.G. § 4B1.1(a). As the offense level for waiver of appeal in a plea agreement is commonly a reasonable estimate of the offense level finally determined at sentencing, the Court inferred that the dramatic change in potential incarceration may have been a motive for the

Defendant's motion to withdraw the guilty plea. The Government attached to its motion a copy of a letter from Assistant United States Attorney Casey to Attorney Hartley dated June 6, 2006, the day before Mr. Newbert entered his guilty plea, which establishes that the parties were aware of the potential for career offender status.[1] *Gov't Mot. for Recons.* Ex. A (Docket # 149) (*Gov't Mot*). Mr. Casey's letter confirms that the Court's inference about the sentencing range differential was based on a faulty premise.

The first question is whether to allow the Government to supplement the record to provide evidence of Mr. Newbert's pre-plea awareness of the sentencing ramifications of his plea. The Government asks for the opportunity to present "evidence of pre-plea discussions among counsel concerning the appeal waiver provision and the contested Career Offender issue." *Gov't Mot*. at 4. It says the "Court will learn that the defendant was aware that he could receive between seventeen and a half and twenty years in jail upon entry of his plea." *Id*. Since neither party had raised the impact of the appeal provision on Mr. Newbert's effort to withdraw his guilty plea, the Court agrees that the record should be supplemented to include the June 6, 2006 letter, but denies the motion to the extent it requests an evidentiary hearing.[2] The Court needs no evidence other than the June 6, 2006 letter to conclude that its inference was unsupported.

The next question is whether consideration of the supplementary evidence alters the Court's ruling on the motion to withdraw plea. It does not. The Court's discussion of the potential impact of the appeal waiver provision was directed toward why Mr. Newbert would plead guilty but quickly change his mind, a turn of events the Court described as "perplexing" in

---

[1] In the letter, Mr. Casey wrote that if Mr. Newbert "is convicted after trial, it is likely that the Court will find him to be a Career Offender" and discusses sentencing ranges on that assumption. *Gov't Mot. for Recons.* Ex. A (Docket # 149) (*Gov't Mot*.).

[2] In view of the supplementary evidence, it becomes evident that the principal effect of the appeal waiver provision would have been to allow Mr. Newbert the right to appeal a determination that he was a career offender, but to waive the right to appeal, if he were determined not to be.

its Order and which remains so. *Order On Def.'s Mot. to Withdraw Guilty Plea* at 22 (Docket # 146) (*Order*).  Eliminating the sentencing differential, however, does not alter the Court's assessment of a central issue: whether Mr. Newbert may actually be innocent.

The Court is still faced with Gail Newbert's testimony that, a few days before the execution of the search warrant, she discovered James Michael Smith stashing cocaine in their basement and she demanded that he remove it and with Desiree Newbert's testimony that Mr. Smith later admitted to her that the cocaine the police found in the Newbert basement was his, not her father's.  The evidence that he was aware of the potential for career criminal status does not change this evaluation, because the Defendant has "presented the sworn testimony of witnesses, other than himself, that another individual is not only guilty of the crime, but has admitted his guilt." *Order* at 25.

This leaves the question as to why Mr. Newbert, in light of his proclaimed innocence, would plead guilty to someone else's crime.  The Court speculated that he may have been willing to do so, given his expectation of a relatively light sentence.  Removing this factor from the calculus makes the case even closer – it removes one seemingly plausible motivation and leaves a series of rather confusing and somewhat contradictory explanations, including that he took the fall for his wife and best friend[3] – but it does not change the outcome.

---

[3] Mr. Newbert gave numerous reasons for his decision to confess to the crime and plead guilty:  (1) to protect his wife, *Hr'g on Mot. to Withdraw Plea Tr.* at 53:4-8; 72:22-24; (2) to protect his friend, Mackie Bedard, *id.* at 50:17-19; (3) to get bailed out, *id.* at 53:4-12; (4) to obtain a transfer to Piscataquis County Jail for medication and to be nearer his family, *id.* at 55:13-22; (5) to repay Mr. Smith and Mr. Smith's boss, Dicky Bell, for coming up with bail money, *id.* at 61:21-25; 62:1-12; 79:18-25; 80:1-5; 82:4-10; (6) to protect Mr. Smith, *id.* at 72:22-25; and, (7) because he "was just giving up." *Id.* at 56:21:25. Mr. Newbert's multiple, confusing, and weak explanations for his decision-making have been among the least impressive parts of his motion. With the elimination of the possibility that he pleaded guilty under a misimpression of the likely length of sentence, his explanations are even more dubious. The Government undoubtedly finds the Court's decision frustrating, because it must now prove to a jury what the Defendant admitted to a judge. But, as the Court explained, "a man's reputation and freedom hang in the balance" and to require the Government to prove its case at trial does not seem to impose an unfair or unreasonable burden, in the unusual circumstances of this case. *Order* at 25.

The Government strenuously contends that the evidence compels the conclusion that, at the point Mr. Newbert entered his guilty plea, he knew that Mr. Smith was going to testify against him and that his wife had moved in with Mr. Smith, making his altruism toward both of them beyond inexplicable. The Court cannot agree. The evidence of the timing of Mr. Newbert's discovery of this information is not nearly as straightforward as the Government insists; the evidence instead is muddled.[4] The Court carefully considered the cumulative evidence surrounding Mr. Newbert's motivations for pleading guilty along with the other permissible factors and ruled in favor of his earnest contention that he should be allowed to defend himself before a jury. The Government's forceful reiteration of its prior argument does not alter the Court's decision.

Finally, the Government points to the fact that no illegal narcotics were ever found in the orange pill bottle that Miranda Newbert testified she saw Mr. Smith hide on the side of the

---

[4] The Government argues that because some of the witnesses recalled that Mr. Newbert was in the Penobscot County Jail when he called them, this confirms that the conversations took place before the June 7, 2006 plea, because he was moved to Piscataquis County Jail directly thereafter. But, the witnesses exhibited hopeless confusion about where Mr. Newbert was when they spoke with him and when these conversations took place. The evidence is anything but clear. Miranda Newbert testified that she told her father about the pill bottle in the summer of 2006, but later insisted that the conversation took place at the Penobscot County Jail. *Hr'g on Mot. to Withdraw Plea Tr.* at 13:19-25; 14:1-5; 18:8-18.

Gail Newbert, Winslow Newbert, and James Michael Smith recall the timing of their various conversations differently. They seem to fix the dates, in part, on whether Gail Newbert was still living with Mr. Smith. Though ordinarily a matter beyond judicial interest, the dates of their live-in relationship become significant. Mr. Smith testified that Gail Newbert moved in "right after [Mr. Newbert] was arrested" and lived with him for about two months. *Id.* at 109:9-16. Mr. Newbert was arrested on April 21, 2006. *Arrest Warrant Returned Executed on April 21, 2006* (Docket # 78). According to Mr. Smith, then, they lived together until approximately June 21, 2006. Gail Newbert testified that her husband had confirmed that he knew James Michael Smith was testifying against him, and said the conversation took place only after she had moved out of Mr. Smith's apartment, which suggests that the conversation took place after the guilty plea. *Id.* at 37:22-25; 38:1-6. But, Mr. Newbert testified he had not spoken to Gail Newbert since he entered his guilty plea. *Id.* at 45:2-9. Mr. Newbert also said that he spoke to Gail Newbert about Mr. Smith's testimony while she was living with Mr. Smith, which suggests the conversations took place before the guilty plea. *Id.* at 56:12-19. Mr. Smith testified that he had several conversations with Mr. Newbert, but only after Gail Newbert had moved out. *Id.* at 109:17-21. If these conversations took place after Mrs. Newbert moved out, they occurred sometime after mid June, 2006 and, therefore, do not establish what Mr. Newbert knew before he entered his guilty plea on June 7, 2006. If the conversations took place while they were together, this only fixes the dates as falling between late April and late June, 2006.

Whether Mr. Newbert called these individuals from the Penobscot or Piscataquis County Jail assumes a significance for purposes of this motion far beyond any ordinary significance. The Court is unwilling to deny this motion because the witnesses' memories are vague or contradictory as to where Mr. Newbert was jailed when he called them or as to the precise dates of the calls.

Newbert basement stairway. The Government complains that it is "speculative" for the Court to conclude that Mr. Smith may have planted illegal drugs at other times in the Newbert home. *Gov't Mot.* at 8-9. The Court rejects this argument. Miranda Newbert testified that sometime during the week before the police search, she was in the kitchen and was able to look down the basement stairs. She observed Mr. Smith put a pill bottle on the side of the basement stairway and she also said that Mr. Smith told her not to tell anybody about the pill bottle.

The evidence at the hearing established that Mr. Smith "uses cocaine a lot" and that he had hidden his cocaine in the Newbert basement on "a couple of different occasions," the last being during the week before the police search. *Hr'g on Mot. to Withdraw Plea Tr.* at 26:3-14. It was about this same time that Miranda saw Mr. Smith hide the bottle on the side of the basement stairway. In view of this evidence, it would be non-sensical to conclude that Mr. Smith would take the trouble to bring a bottle of legal prescriptive medicine to the Newbert's house, secrete it on the side of their basement stairway, and then warn Miranda not to tell anyone. But, more to the point, the Court did not weigh Miranda's testimony as a significant factor in granting the motion, since the relationship between the pill bottle and this case has never been adequately explained. *See Order* at 19-20, 22.

In sum, the Court concludes that, in light of the compelling evidence that Mr. Newbert was aware of the potential for a sentence as a career offender, the Court's ruminations about the role of a sudden change in sentencing were unwarranted; however, even with this clarification, the Court affirms its conclusion that Mr. Newbert is entitled to a trial to determine whether he is guilty as he admitted or innocent as he now claims to be.

The Court GRANTS in part the Government's Motion to Supplement the Record to include the June 6, 2006 letter from Assistant United States Attorney Casey to Attorney Hartley,

5

but DENIES the Government's request to otherwise reopen the evidence on the motion to withdraw guilty plea. The Court DENIES the Government's Motion to Reconsider Order Granting the Defendant's Motion to Withdraw Guilty Plea (Docket # 149).

    SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of January, 2007