UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CR-05-53-B-W |
| | ) | |
| | ) | |
| WINSLOW NEWBERT | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON GOVERNMENT AND DEFENDANT'S MOTIONS IN LIMINE**

The Court concludes that the Defendant's successful motion to withdraw his guilty plea, based on post-plea evidence of his actual innocence, does not constitute a breach of the plea agreement and, therefore, evidence of the entry of his guilty plea and his statements leading to the guilty plea are admissible in his upcoming trial only in accordance with Federal Rule of Evidence 410.

**I. STATEMENT OF FACTS**

On June 7, 2006, at the Rule 11 hearing, Winslow Newbert admitted that he was guilty of possession with the intent to distribute cocaine, a violation of 21 U.S.C. § 841(a)(1). At the Rule 11 hearing, the parties presented a signed Plea Agreement, which contained the following provision:

> Consequences of Breach. If Defendant fails to enter a guilty plea or seeks and is allowed to withdraw his plea of guilty entered pursuant to this Agreement, under circumstances constituting a breach of this Agreement, or if Defendant's guilty plea is rejected due to Defendant's conduct constituting a breach of this Agreement, he hereby waives any rights that he has under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure. Defendant understands that by

> waiving such right, the following would be admissible against him in any subsequent prosecution for the conduct underlying the charges in the case: (a) the fact that he pleaded guilty in this case; (b) all statements made in the course of the guilty plea; and (c) all statements made during the course of plea discussions.

*Plea Agreement* ¶ 5 (Docket # 109) (*Agreement*). On July 31, 2006, Mr. Newbert moved to withdraw his guilty plea; on January 17, 2007, the Court granted his motion, and on January 22, 2007, the Court denied the Government's motion for reconsideration. *Def.'s Mot. to Withdraw Plea of Guilty* (Docket # 115); *Order on Def.'s Mot. to Withdraw Guilty Plea* (Docket # 146) (*Order*); *Order on Gov't Mot. to Reconsider Order Granting Def.'s Mot. to Withdraw Guilty Plea* (Docket # 150). On February 12, 2007, the Government moved *in limine* for an order pursuant to the provision in the Plea Agreement that Mr. Newbert's guilty plea and statements are admissible in its case-in-chief. *Gov't Mot. in Limine Re: Prior Guilty Plea* (Docket # 156) (*Gov't Mot.*). In response, the Defendant filed a similar motion asking that the guilty plea be excluded. *Mot. in Limine Regarding the Admissibility at Trial of Def.'s Guilty Plea* (Docket # 161) (*Def.'s Mot.*). On February 28, 2007, the Government filed a motion to reopen the hearing to present evidence challenging the evidentiary basis of the Court's decision to allow the Defendant to withdraw his guilty plea; the Court denied the motion from the bench on February 28, 2007. *Gov't Mot. to Re-open Hr'g on the Def.'s Mot. to Withdraw Guilty Plea* (Docket # 170); *Oral Order* (Docket # 172).

## II. DISCUSSION

### A. *Kercheval v. United States* and *United States v. Mezzanatto*

In 1927, the Supreme Court concluded that "the weight of reason is against the introduction in evidence of a plea of guilty withdrawn on order of court granting leave and permitting the substitution of a plea of not guilty." *Kercheval v. United States*, 274 U.S. 220,

225 (1927). *Kercheval* wrote that the "withdrawal of a plea of guilty is a poor privilege, if, notwithstanding its withdrawal, it may be used in evidence under the plea of not guilty." *Id.* at 224-25 (quoting *White v. State*, 51 Ga. 285, 289 (1874)). *Kercheval* is still good law and the essence of its holding is now found in Federal Rule of Evidence Rule 410 and Federal Rule of Criminal Procedure 11(f).[1]

Nearly seventy years later, the Supreme Court addressed the related question of whether a defendant can waive his right not to have statements he made in the course of plea discussions admitted into evidence at a later trial. *United States v. Mezzanatto*, 513 U.S. 196 (1995). In *Mezzanatto*, the defendant made incriminating statements during a proffer session, but later at trial, he objected to the admission of the proffer statements as impeachment evidence. In upholding the admissibility of the proffer statements, the Supreme Court pointed out that the "most basic rights of criminal defendants are . . . subject to waiver." *Id.* at 201 (citation omitted); *see also Halbert v. Michigan*, 545 U.S. 605, 637 (2005) ("Legal rights, even constitutional ones, are presumptively waivable."). The right to waive one's legal rights extends to the right to waive the provisions of the rules of criminal procedure and evidence. *Id.* at 201-03. *Mezzanatto* observed that the defendant had "conferred with his lawyer after the prosecutor proposed waiver as a condition of proceeding with the plea discussion, and he has never complained that he entered into the waiver agreement at issue unknowingly or involuntarily." *Id.* at 210-11.

---

[1] Federal Rule of Criminal Procedure 11(f) reads: "The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Federal Rule of Evidence 410, in turn, reads: "Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions: (1) a plea of guilty which was later withdrawn; (2) a plea of nolo contendere; (3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas; or (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn."

*Mezzanatto* has since been extended to include evidence of the entry of a guilty plea subsequently withdrawn and statements made during discussions leading to the guilty plea.[2] *United States v. Rebbe*, 314 F.3d 402 (9th Cir. 2002); *United States v. Krilich*, 159 F.3d 1020 (7th Cir. 1998); *United States v. Burch*, 156 F.3d 1315 (D.C. Cir. 1998); *United States v. Watkins*, 85 F.3d 498 (10th Cir. 1996); *United States v. Lloyd*, 43 F.3d 1183 (8th Cir. 1994); *United States v. Knight*, 867 F.2d 1285 (11th Cir. 1989); *People v. Stevens*, 610 N.W.2d 881 (Mich. 2000).

### B.  Knowing, Intelligent and Voluntary Waiver

Here, even though the Court allowed the Defendant to withdraw his guilty plea, it rejected any contention that he was either not competent to enter a guilty plea on June 7, 2006, or that his guilty plea was not knowing or was involuntary. *Order* at 5-10. The Court concluded that "Mr. Newbert's guilty plea on June 7, 2006 complied with each of the formal requirements of Rule 11 and that his guilty plea was knowing, intelligent and voluntary." *Id.* at 10. Mr. Newbert now argues that his agreement to waive the protections of Rule 410 and Rule 11(f) was neither voluntary nor knowing, because the Court failed to single out paragraph five of the Plea Agreement for review during the Rule 11 colloquy.[3] *Def.'s Mot*. at 2. The Court does not agree.

---

[2] Not all agreements are the same. In *United States v. Lauersen*, the Court described the limited use immunity agreement, known in the Southern District of New York as a "Queen for a Day" agreement, as allowing the introduction of proffer statements for a limited number of purposes, including cross-examination of the defendant if she testifies. *See* S2 98 Cr. 1134 (WHP), 2000 U.S. Dist. LEXIS 16404 (S.D.N.Y. November 13, 2000), rev'd on other grounds, 343 F.3d 604 (2d Cir. 2003). In the Second Circuit, there was a controversy as to whether waivers that allowed the Government to use statements by the defendant in a proffer could be used only if the defendant himself took the stand or whether they could be used if the defendant put on witnesses or other evidence contradicting the statements. *Compare United States v. Duffy*, 133 F. Supp. 2d 213 (E.D.N.Y. 2001) *with United States v. Gomez*, 210 F. Supp. 2d 465 (S.D.N.Y. 2002). In *United States v. Velez*, 354 F.3d 190, 194-97 (2d Cir. 2004), the Second Circuit concluded that the proffer evidence could be admitted so long as the defendant presented evidence inconsistent with his proffer statements. In this case, the waiver language in the plea agreement is broader than the language apparently used commonly in the Second Circuit.

[3] Mr. Newbert cites *United States v. Burch*, where the Court of Appeals noted that, at the Rule 11, the trial judge had gone "through the specific terms of the plea agreement with [the defendant], including the provision in which he waived his rights under Rules 11[f] and 410." 156 F.3d 1315, 1323 (D.C. Cir. 1998). Although on June 7, 2006, the Court did not read aloud paragraph five of the Plea Agreement to the Defendant, the Court closely questioned him

4

*Mezzanatto* focused on whether the defendant received adequate advice before entering the agreement and whether his waiver was knowing and voluntary. *Mezzanatto* at 210-11. Mr. Newbert was well represented at the Rule 11 and, in the plea agreement itself, his attorney affirmed in writing that he had "carefully reviewed every part" of the agreement with Mr. Newbert and that, to his knowledge, Mr. Newbert's decision to enter into the agreement was "an informed and voluntary one." *Agreement* at 5. The Court's earlier conclusion – that Mr. Newbert's guilty plea was knowing, intelligent, and voluntary – remains the same as regards the waiver in paragraph five. *See Order* at 5-10.

### C. "Circumstances Constituting A Breach"

There is another issue. A plea agreement is properly viewed as a contract between the government and the defendant. *United States v. Lopez*, 944 F.2d 33, 36 (1st Cir. 1991). In evaluating a plea agreement, the court will "look to the language of the document, focusing squarely within its four corners." *United States v. Anderson*, 921 F.2d 335, 337-38 (1st Cir. 1990). Where, as here, the agreement contains an integration clause, the court is required to enforce its terms "according to its tenor." *United States v. De-La-Cruz Castro*, 299 F.3d 5, 14 (1st Cir. 2002). In this case, paragraph five states in part:

> Consequences of Breach. *If Defendant* fails to enter a guilty plea or seeks and *is allowed to withdraw his plea of guilty entered pursuant to this Agreement, under circumstances constituting a breach of this Agreement*, or if Defendant's guilty plea is rejected due to Defendant's conduct constituting a breach of this Agreement, he hereby waives any rights that he has under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure.

---

about the agreement, including whether he had signed it voluntarily, whether he had read it, whether he had understood everything in it before he had signed it, and whether, in signing it, he intended to agree to all its terms and conditions. *Rule 11 Tr.* at 14-15 (Docket # 116). The plea agreement contains the following representation by Mr. Newbert: "I have read this Agreement and have carefully reviewed every part of it. I understand it and I have voluntarily agreed to it." *Agreement* at 4.

*Agreement* at ¶ 5 (emphasis supplied).

The phrase "under circumstances constituting a breach of this Agreement" is curious. Court approval is required to withdraw a guilty plea. Fed. R. Crim. P. 11(d)(2). The phrase, "under circumstances constituting a breach," assumes that, even though judicially sanctioned, there are some guilty plea withdrawals that will constitute a breach and some that will not. The plea agreement does not define a breach of the agreement and it is silent as to when a court-ordered plea withdrawal will constitute a breach of the agreement so as to allow the admission of the guilty plea and inculpatory statements at a later trial.[4]

There is general authority that a defendant's motion to withdraw a guilty plea may constitute a breach of the plea agreement. *United States v. Molinaro*, 11 F.3d 853, 864 (9th Cir. 1993) ("The prosecution expressly reserved the right to use these statements against [the defendant] if he breached the plea agreement, and [the defendant] breached the agreement by withdrawing his guilty plea."); *Swick v. United States*, 186 Fed. Appx. 717 (8th Cir. 2006). From a policy viewpoint, it can be argued that the very essence of a plea agreement is that the defendant admits his guilt in exchange for the government's agreements. Under this theory, a later motion denying guilt necessarily strikes at the heart of the bargain and therefore constitutes a breach.[5]

---

[4] This issue was not briefed by the parties but, after realizing its potential significance, the Court heard oral argument on February 28, 2007 on this issue. The Court allowed the parties to file additional memoranda on the issue.

[5] The Government quotes *United States v. Scruggs* for the proposition that "the defendant's withdrawal of his guilty plea 'affected the very essence of the contract' with the Government." *Gov't Supplemental Mem. in Supp. of Mot. in Limine* at 6 (quoting *United States v. Scruggs*, 356 F.3d 539, 544 (4th Cir. 2004)) (Docket # 174) (*Gov't Mem.*). But, *Scruggs* is a markedly different case. In *Scruggs*, the defendant and the government entered into a plea agreement in which Mr. Scruggs was required to cooperate fully with the United States and provide all information known to the defendant regarding any criminal activity. After the government learned that Mr. Scruggs had been involved in a murder, Mr. Scruggs "first denied knowledge of the incident, then admitted his involvement in the murder, then recanted and denied any knowledge, then gave a different version of the story regarding his involvement, and then, on June 11, again recanted through his attorney." *Scruggs*, 356 F.3d at 542. The Fourth Circuit had little trouble concluding that Mr. Scruggs breached his plea agreement in a fashion that affected the very essence of the contract with the government. But, Mr. Newbert is not Mr. Scruggs.

But, the Government here does not take such an extreme position. It acknowledges that there may be some instances where a defendant could move to withdraw his guilty plea and not breach the agreement. The Government presents three examples. First, the Government posits that, if new evidence were discovered, post-plea, which demonstrated the defendant's innocence, the Government would not assert that, by moving to withdraw the plea, the defendant breached the agreement. Although this seems sensible, the Government's example is not relevant. Here the question is whether the defendant waived his Rule 410 and Rule 11(f) rights not to have the fact of the guilty plea and inculpatory statements admitted into evidence at a subsequent trial. If the government discovered sufficiently convincing exculpatory evidence to acquiesce to the defendant's motion to withdraw his guilty plea, it would follow that the government would not then be seeking a trial on the same charge; whether the defendant had breached the plea agreement and whether his guilty plea would be admissible would be irrelevant.

The second example is where the Government learned post-plea that the cocaine was actually cocaine base and notified the defendant that he would be subject to significantly enhanced penalties. The third example is where the Government declined, contrary to the terms of the agreement, to recommend acceptance of responsibility at the sentencing. Each of the Government's examples, however, rests on actions the Government has taken and decisions it has made, which alter the fundamental premise of the agreement; none addresses circumstances where a defendant could rightfully assert that the plea agreement was not breached, based on factors unrelated to the government's actions and decisions. The question here is what circumstances generated by the defendant, not necessarily agreed to by the government, should not be considered a breach.

The Government then argued that, even if convincing exculpatory evidence were discovered that demonstrated that the defendant was not guilty of the offense which was the subject of the plea agreement, the Government could seek to introduce the guilty plea or inculpatory statements into evidence at a later trial for a related offense. This argument does not withstand analysis either. The last sentence of paragraph five reads:

> Defendant understands that by waiving such right, the following would be admissible against him *in any subsequent prosecution for the conduct underlying the charges in the case*: (a) the fact that he pleaded guilty in this case; (b) all statements made in the course of the guilty plea; and (c) all statements made during the course of plea discussions.

*Agreement* ¶ 5. Thus, the waiver is limited to "any subsequent prosecution for the conduct underlying the charges" in that case and could not, by its terms, be applicable to a subsequent prosecution for another offense.

This leads the Court back to the still unanswered question: When would a judicially sanctioned withdrawal of a guilty plea not constitute a breach of the agreement so as to make inapplicable the Rule 410 and Rule 11(f) waiver? A plea agreement is the result of a bargain between the Government and the defendant. The Government, confident that it can prove its case beyond a reasonable doubt, but aware of the irreducible uncertainties of trial, governmental costs, witness availability, and a host of other concerns, enters into a plea agreement often compromising its positions to some degree, sometimes as regards the conduct to which the defendant agrees to admit or usually as regards what the government is prepared to recommend at sentencing. The calculus for the defendant is a mirror image. At its heart, the defendant must make a cold-eyed assessment of what the government is likely to be able to prove, were the case to go to trial, and then strike whatever bargain seems best, based on his assessment of the strength of the government's case.

Once the plea agreement has been signed and the guilty plea accepted, it is "human nature for defendants to wonder what would have happened if they had put the Government to its proof and later to rue their decisions to plead guilty." *United States v. Leland*, 370 F. Supp. 2d 337, 343 (D. Me. 2005). But, not all motions are created equal. Some, even though successful, may reflect the court's reluctance to sentence someone who insists he is innocent, albeit belatedly. *See Burch*, 156 F.3d at 1319 ("Implausible as Mr. Burch's belated claim of innocence may seem, the Court will give Mr. Burch his day in court."). Others, such as this case, present at least a plausible claim of actual innocence from evidence obtained after the guilty plea. If the latter is the case, the defendant cannot have breached the plea agreement by filing the motion to withdraw, since this new evidence would likely have substantially affected his decision to enter the plea agreement in the first place.[6] *See United States v. Bunner*, 134 F.3d 1000, 1004 (10th Cir. 1998) ("Occasionally, however, through no fault of either party, a reasonably unforeseeable event intervenes, destroying the basis of the contract and creating a situation where performance by one party will no longer give the receiving party what induced him to enter into the contract in the first place.").

Here, before Mr. Newbert entered his guilty plea, his wife had told him that she had seen James Michael Smith, his best friend, hiding cocaine in their basement a couple of days before the police searched their residence. If Mr. Newbert's motion to withdraw his guilty plea were based solely on information he knew before he entered the plea, it would be difficult to conclude that his later motion to withdraw his plea did not breach the plea agreement. Here, however, it was after Mr. Newbert entered his guilty plea that he learned that James Michael Smith had

---

[6] Even when new evidence is adduced, this does not necessarily mean that the court will grant the motion to withdraw. The First Circuit has established a series of factors that the trial court must evaluate before allowing a defendant to withdraw his guilty plea. *See Order.* An example where a defendant's motion could well be denied, even in the face of new exculpatory evidence, could be when the government demonstrates significant prejudice as a result of the delay caused by the sequencing of the guilty plea and the motion to withdraw.

admitted to Mr. Newbert's daughter, Desiree, that the cocaine in the basement was his and not Mr. Newbert's. In the Court's view, this new evidence would have significantly affected Mr. Newbert's analysis of the strength of the government's case and, taken together with his wife's earlier assertions, the cumulative evidence, both pre- and post-plea, provides a "a facially plausible explanation for his guilty plea." *United States v. Newbert*, CR-05-53-B-W, 2007 U.S. Dist. LEXIS 3520, at *45-46 (D. Me. Jan. 17, 2007). As such, the Court cannot conclude that the Defendant's motion to withdraw constituted a breach of the plea agreement and because it did not constitute a breach, paragraph five by its own terms, does not obtain.

This conclusion is a necessary corollary to the Government's contention that if it determined that a defendant was actually innocent, the phrase "under circumstances constituting a breach" in paragraph five would provide a legitimate basis for the withdrawal of the guilty plea without implicating its waiver provisions. But, the plea agreement is a two-party contact and the defendant has an equal right to present his view that whatever formed the basis for his motion does not constitute a breach. The decision as to whether the agreement is breached cannot be with the Government alone; rather, it must rest with the Court, as the Government concedes. If the Court determines that the defendant's post-plea evidence is sufficient to substantially affect the basis upon which the defendant entered the plea agreement, a motion to withdraw cannot constitute a breach of this agreement.

The Government raises significant concerns about the enforceability of plea agreements if there is no sanction against a defendant who seeks to withdraw his guilty plea. It argues:

> If the Government expected that its plea agreements could be breached by every defendant who offered an implausible story and who the Court allowed out an abundance of discretion to withdraw his guilty plea, without consequence, plea agreements would not be worth the paper on which they are written. Consequently, the

10

> Government would not enter plea agreements. The resulting impact on the Court's criminal docket should be obvious.[7]

*Gov't Supplemental Mem. in Supp. of Mot. in Limine* at 5-6 (Docket # 174). The Court's rulings, in allowing the withdrawal of the guilty plea and in finding against a waiver, are much more limited than the Government's zealous characterization. To reach this point, the defendant must first be successful in his motion to withdraw his guilty plea, a motion fraught with difficulty; the defendant must also demonstrate that the basis of the motion is evidence that he discovered only after he entered his guilty plea, that he could not, acting with due diligence, have discovered the evidence before entering into the guilty plea, that the evidence establishes a plausible basis for concluding that the defendant was not guilty of the crime to which he pleaded guilty, and that the evidence would have materially affected his decision as to whether to plead guilty. These significant limitations are rarely met, but they happen to be met in this case.

Moreover, if Mr. Newbert is found not guilty, it is true there will be no sanction for his withdrawal of the plea and there should be none. If, however, he is found guilty, it is unlikely he will be granted acceptance of responsibility under U.S.S.G. § 3E1.1, a factor that the Government itself has suggested will result in a significantly higher guideline sentencing range than the one he bargained for, and would have received, under the plea agreement.

Finally, the Government itself drafted the plea agreement. It placed in that agreement the phrase, "under circumstances constituting a breach." The Court is required to interpret the phrase evenly, applying it with equal force to both parties. Although the Government has given examples of instances where, with its acquiescence, the defendant could move to withdraw his

---

[7] The Government has made it plain that it is most unhappy with the Court's decision to allow Mr. Newbert to withdraw his guilty plea. Since the decision, it has filed two motions for reconsideration and now argues that, if it is not allowed to introduce evidence of the guilty plea and Mr. Newbert's inculpatory statements, the Court will "effectively negate the best tool by which the Government holds criminal defendants to their guilty pleas." *Gov't Mem.* at 8. It is not, however, the Court's role to make the Government happy or to assist the Government in holding criminal defendants to their guilty pleas, especially where defendants have presented a plausible claim of actual innocence based on post-plea information.

guilty plea without breaching the agreement, it has given no examples of when the defendant could do so without the government's acquiescence. The phrase "under circumstances constituting a breach" does not, however, require the government's consent to the defendant's motion to withdraw. If the government interprets the phrase to allow for withdrawal without breach when it agrees that new evidence establishes the defendant's innocence, the phrase must be interpreted evenly to allow for withdrawal without breach when the defendant presents post-plea evidence of innocence and the Court concurs, even if the government does not.

### III. CONCLUSION

The Court concludes that, based on the language of the plea agreement itself, Winslow Newbert's motion to withdraw his guilty plea did not breach the terms of the agreement and therefore the Rule 410 and Rule 11(f) waivers do not obtain. Evidence of his guilty plea and his statements leading to, and at, his guilty plea are admissible only in accordance with the provisions of Rule 410. The Court DENIES the Government's Motion *in Limine* (Docket # 156) and GRANTS the Defendant's corresponding Motion *in Limine* (Docket # 161) and Supplemental Motion in Limine (Docket # 175).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of March, 2007