UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-05-53-B-W |
| | ) | |
| WINSLOW NEWBERT, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR A NEW TRIAL**

Winslow Newbert, having been convicted of possession of cocaine with the intent to distribute it, seeks a new trial on the ground that the Government failed to produce evidence that he traded cocaine as opposed to other drugs or cash in exchange for stolen property. The Court denies Mr. Newbert's motion on this contention, because he is factually incorrect. Further, to the extent that Mr. Newbert complains that he was prevented from questioning Government witnesses about whether he had traded stolen property for Oxycodone – a drug for which he was not charged – Mr. Newbert himself successfully argued for the exclusion of evidence of Oxycodone and cannot claim error from the exclusion of evidence he sought to exclude.[1]

**I.  STATEMENT OF FACTS**

On December 13, 2007, the third day of a jury trial, Winslow Newbert was convicted of possession with the intent to distribute cocaine, a violation of 21 U.S.C. § 841(a)(1).[2]  *Jury Verdict Form.*  On December 17, 2007, Mr. Newbert moved for a new trial; the Government

---

[1] The evidence refers variously to Oxycodone and Oxycontin; the Court uses Oxycodone to cover both terms.

[2] Mr. Newbert's trial was held after the Court allowed him to withdraw his guilty plea. *United States v. Newbert*, 471 F. Supp. 2d 182 (D. Me. 2007). The Court later ruled evidence of his guilty plea inadmissible during the subsequent trial, a decision the First Circuit affirmed. *United States v. Newbert*, 477 F. Supp. 2d 287, 294-95 (D. Me. 2007), *aff'd*, 504 F.3d 180 (1st Cir. 2007). Mr. Newbert asked for and received jury instructions on the lesser included charge of possession of cocaine without the intent to distribute it. *See Jury Verdict Form* (Docket # 249). The jury found him guilty of the more serious offense of possession with the intent to distribute.

opposes the motion. *Mot. for New Trial* (Docket # 252) (*Def.'s Mot*); *Government's Resp. to Def.'s Mot. for a New Trial* (Docket # 253).

At trial, the Government presented testimony that on February 28, 2002, a number of police officers executed a search warrant at Winslow Newbert's home on 31 Clinton Street, Milo, Maine. Detective William Flagg testified that he interviewed Mr. Newbert while other officers searched the residence. Initially, according to Detective Flagg, Mr. Newbert was "standoffish, denying, distancing himself from the issue, if you will." During the interview, however, when Officer Mike Holmes showed Mr. Newbert an eighteen gram bag of cocaine found in his residence, Detective Flagg said that Mr. Newbert's "eyes dropped, his shoulders slumped . . . he gave in and cooperated." Detective Flagg further testified that Mr. Newbert admitted that the cocaine "was his," that he "uses cocaine," and that he had "exchanged cocaine for stolen property." Testimony showed that Mr. Newbert then walked through the house, "pointing out property that was likely stolen, that he had taken and either had purchased or exchanged for drugs."

Before trial, Mr. Newbert moved *in limine* to exclude evidence of Oxycodone. *Def.'s Mot.* in Limine *Regarding Alleged Bad Acts* (Docket # 103). On May 1, 2006, the Government had informed Mr. Newbert that it intended to introduce Rule 404(b) evidence, namely that Mr. Newbert informed the investigators that he had traded both Oxycodone and cocaine for stolen property. *Id.* at Ex. A. In response to Mr. Newbert's motion, the Court held a non-testimonial hearing on December 10, 2007. *Minute Entry* (Docket # 23). The Court ruled that the Government could not introduce evidence of Oxycodone in its case-in-chief; however, if the Defendant opened the door on the issue, the Government could enter.

The morning of the first day of trial after jury selection, Mr. Newbert took his argument one step further. Having successfully excluded evidence about Oxycodone, Mr. Newbert argued that the Government should be prevented from introducing any evidence that he admitted he had traded drugs for stolen property, unless the Government produced evidence that he had specifically referred to cocaine as opposed to Oxycodone or other illicit drugs. For example, he noted that when Mr. Newbert took the officers around his home and pointed out stolen property, he simply identified the stolen property and failed to clarify whether the property was received for cocaine, for Oxycodone, or for cash. He noted that he had not been federally charged with exchanging Oxycodone or cash for stolen property and asked the Court to hold an *in limine* hearing to determine "what property could be identified by these witnesses as having been traded for cocaine, as opposed to Oxycontin or another drug." *Def.'s Mot.* at 1. The Court overruled Mr. Newbert's objection and declined to hold an evidentiary hearing.

## II.    THE DEFENDANT'S MOTION FOR NEW TRIAL

Mr. Newbert's motion centers on an alleged failure of proof. Mr. Newbert contends that, although two investigating officers testified that he admitted trading unnamed "drugs" for stolen property, they never confirmed that he admitted trading cocaine – the drug charged – for stolen property. *Def.'s Mot.* at 1. Further, he says that when he attempted to explore this failure of proof by cross-examining the officers, the Court refused to allow him to do so and even refused to allow him to pursue the issue outside the presence of the jury. *Id.* He claims this justifies a new trial.

## III.  DISCUSSION

### A.  Standard for New Trial

Federal Rule of Criminal Procedure 33(a) provides, in part, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33.  In general, a "district court has greater power to order a new trial than to overturn a jury's verdict through a judgment of acquittal."  *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir. 1986).  On the other hand, there are "definite limits upon a district court's right to upset a jury verdict."  *Id.* at 322.  The First Circuit has directed that the "remedy of a new trial [be] sparingly used, and then only where there would be a miscarriage of justice . . . and where the evidence preponderates heavily against the verdict."  *United States v. Indelicato*, 611 F.2d 376, 387 (1st Cir. 1979) (quotation marks omitted).  The standards for a Rule 33 motion are rigorous.  *United States v. Maldonado-Rivera*, 489 F.3d 60, 65-66 (1st Cir. 2007) (setting forth the criteria for granting a new trial based on new evidence); *Rothrock*, 806 F.2d at 322 ("[A] trial judge is not a thirteenth juror who may set aside a verdict merely because he would have reached different result."); *United States v. Rivera Rangel*, 396 F.3d 476, 485-86 (1st Cir. 2005) (setting forth the criteria for a new trial based on a *Brady* violation).

Here, although Mr. Newbert's motion is cryptic, it appears that he is not asking the court to countermand the verdict because the weight of the admitted evidence "preponderates heavily against the verdict."  *Indelicato*, 611 F.2d at 386.  Rather, the sole basis of the Rule 33 motion is that the trial court erred in its evidentiary rulings and thereby committed "grave errors," justifying a new trial.  *United States v. Andrade*, 94 F.3d 9, 14 (1st Cir. 1996).

### B.  A Faulty Factual Premise

4

Mr. Newbert's first claim of error is based on a faulty factual premise. He seems to believe that there was no evidence that he admitted to exchanging cocaine for stolen property. *Def.'s Mot.* at 1 ("At trial, then, witnesses Flagg and Pearson both testified as to Mr. Newbert's admission to trading 'drugs' for stolen property. Without the requested in-limine hearing, and especially where the reports from these officers are similarly vague, this Court cannot know whether Newbert ever admitted to trading cocaine for stolen property. In his closing argument, AUSA Casey compounded the prejudice when he incorrectly told the jury that the evidence showed that Newbert had admitted to trading *cocaine* for stolen property.") (emphasis in original). Mr. Newbert is simply incorrect: Detective Flagg specifically testified that Mr. Newbert admitted "he had exchanged cocaine for stolen property." Mr. Newbert's argument is based on an inaccurate recollection of the testimony at trial.

### C. A Matter of Trial Strategy

Before trial, the Court excluded evidence of Oxycodone in the Government's case-in-chief, but warned the Defendant that the evidence might be admissible if he opened the door. Consistent with the Court's ruling, the Government instructed its witnesses not to refer to their discovery of Oxycodone or to Mr. Newbert's statements about Oxycodone during their direct testimony. Detective Flagg testified that after Mr. Newbert was shown the cocaine discovered in his residence, he admitted that he had traded cocaine for stolen property.[3] The Government's

---

[3] The Defendant seemed to suggest that if the police were cross-examined, they would have confirmed that Mr. Newbert failed to specify that he traded cocaine for stolen property. However, there is no evidence that this is correct and to the extent there is any indication, it is to the contrary. Police reports that were not admitted into evidence confirmed that Mr. Newbert acknowledged he had traded both Oxycontin and cocaine for stolen property and the reports were generally consistent with the officers' testimony. One police report by Agent Luce, a Government witness, was marked, but not admitted into evidence. *Def.'s* Ex. 3. It confirmed that Mr. Newbert told Detective Flagg that he "often swapped either Cocaine or Oxycontin for the stolen property." *Id.* at 3. Defense counsel referred to the report during his cross-examination of Agent Luce, but when the Government sought to introduce it on redirect examination, defense counsel objected because it contained a reference to Oxycontin. The Court sustained the Defendant's objection. Similarly, a police report by Detective Flagg was also referred to, but

witnesses and exhibits demonstrated that Mr. Newbert walked around the house with the officers identifying property he believed was stolen, but testimony did not specify whether he confirmed that a particular item was obtained for cocaine, Oxycodone, or cash. In accordance with the Court's ruling and the prosecutor's instructions, none of the Government's witnesses mentioned Oxycodone.

This absence of specificity was caused in significant part by the Defendant's strategic decision to ask the Court to exclude reference to Oxycodone. If Mr. Newbert wished to do so, he could have allowed the officers to testify about his statements regarding exchanging Oxycodone for stolen property, could have cross-examined the officers about Mr. Newbert's failure to specify the property attributable to his cocaine dealing, and could have argued to the jury that the Government failed to demonstrate a connection between the specific drug it had charged, namely cocaine, and the property he admitted was stolen. Instead, Mr. Newbert opted to seek an order excluding reference to Oxycodone. Successfully excluding Oxycodone had a decided benefit – the jury was unaware that the police had found other drugs in the house and that he had admitted to trading them in exchange for stolen property. But, it also had a drawback – the officers could not be questioned about Mr. Newbert's failure to specify which stolen property was related to which drug without revealing evidence of Oxycodone. It was Mr. Newbert's trial strategy to move to exclude evidence of Oxycodone and this makes Mr. Newbert's current argument untenable: he contends that he is entitled to a new trial because the Court excluded the evidence that he sought to have excluded. Having secured the benefit of the Court's ruling in his favor, he cannot now claim it was error for the Court to do so.

---

not moved into evidence. *Def.'s Ex.* 1. It stated that Mr. Newbert admitted that "[h]e often swapped either cocaine or Oxy-Contin (sic) for property." *Id.* at 2.

6

Mr. Newbert is also incorrect in alleging that the Court refused to allow him to cross-examine the officers on this issue. As the Court's rulings both before and during trial establish, Mr. Newbert could have asked the officers about whether he had actually identified a specific drug as he pointed out the stolen property. But, if he commenced that line of questioning, he would have opened the door to the Government's evidence regarding Oxycodone.[4] The officers would have been free to answer that Mr. Newbert had identified two drugs that he had traded for stolen property – cocaine and Oxycodone – and that he had no need to differentiate between the two, because his dealing in either case was illegal.[5] During trial, Mr. Newbert (presumably wisely) chose not to cross-examine the officers on this subject. Now, Mr. Newbert wishes to have it both ways: to exclude evidence of the Oxycodone and then to cross-examine the officers on an absence of proof he had procured. It would not be in the "interests of justice," as required by Rule 33, to allow the Defendant a new trial based on the consequences of his own trial strategy.

Mr. Newbert offers no basis for a new trial.

## IV. CONCLUSION

The Court DENIES Winslow Newbert's Motion for New Trial (Docket # 252).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of January, 2008

---

[4] For example, during cross examination of Agent Luce, when defense counsel began to ask questions that could have provoked a response that included reference to Oxycodone, the Government drew attention to defense counsel's expansive phrasing and, as a result, defense counsel reframed his question to avoid eliciting such a reference.

[5] Mr. Newbert could also have questioned the government witnesses about his failure to distinguish between the stolen property he received for cash as opposed to drugs. He would have then run the risk that in response Government witnesses would have been allowed to testify about his trading Oxycodone for stolen property.